# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**SADANNIE GRIFFITH,**

  **Plaintiff,**

**v.**                                                                    **CASE NO. 19-CV-01601 (NGG) (JO)**

**CONEY FOOD CORP. d/b/a CHECKERS,**
**CHECKERS DRIVE-IN RESTAURANTS, INC.,**
**and JAVAID ABID,** *Individually*

  **Defendants.**

_____/

### DEFENDANT CHECKERS DRIVE-IN
### RESTAURANTS, INC.'S MOTION TO DISMISS

### NOTICE OF MOTION

Defendant Checkers Drive-In Restaurants, Inc. ("Franchisor") moves to dismiss Plaintiff Sadannie Griffith's First Amended Complaint ("Amended Complaint") for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  The grounds upon which this motion is based are set forth below.

**I**

## TABLE OF CONTENTS

I.      TABLE OF CONTENTS.................................................................. i

II.     TABLE OF AUTHORITIES ........................................................ ii

III.    MEMORANDUM OF LAW .........................................................1

    A.      BACKGROUND ...............................................................1

    B.      LEGAL ARGUMENT.......................................................3

        1.      Summary of the Argument.........................................3

        2.      Legal Standards..........................................................4

            a.      Motions To Dismiss Under Rule 12(b)(1) ...........................4

            b.      Motions To Dismiss Under Rule 12(b)(6) ...........................5

        3.      Franchisor Was Not Plaintiff's Employer or Joint Employer.....................6

            a.      Employment Status Under Antidiscrimination Laws .........................6

            b.      Employment Status Under Wage/Hour Laws....................................10

        4.      Even If Franchisor Were Plaintiff's Joint Employer, Plaintiff Alleges No Basis For Franchisor's Liability.................................14

        5.      Plaintiff's Title VII Claim Is Time-Barred. ................................16

        6.      Plaintiff's Discrimination Claims Under State And Municipal Law Are Barred By Her Earlier Election Of An Administrative Remedy. ..............19

        7.      The NYLL Claims Fail Because Plaintiff Fails To Allege A Contract Between Herself And Franchisor For The Payment Of Wages.................20

III.    CONCLUSION.........................................................................21

II

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                     **Page(s)**

*Amaya v. Garden City Irrigation, Inc.*,
  645 F. Supp. 2d 116 (E.D.N.Y. 2009) ...............................................................15

*Andreula v. Steinway Baraqafood Corp.*,
  243 A.D.2d 596, 668 N.Y.S.2d 891 (N.Y. App. Div., 2d Dep't 1997) ..................11

*Baldwin County Welcome Ctr. v. Brown*,
  466 U.S. 147 (1984) (per curiam) ......................................................................17

*Bray v. New York City Dept. of Educ.*,
  11 CIV. 7884 DLC, 2013 WL 3481532 (S.D.N.Y. July 10, 2013) .......................17

*Bui v. Minority Mobile Systems, Inc.*,
  2016 WL 344969 (S.D. Fla. Jan. 28, 2016) ..........................................................7

*Bynog v. Cipriani Grp., Inc.*,
  1 N.Y.3d 193, 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003).................................12

*Cornwell v. Robinson*,
  23 F.3d 694 (2d Cir. 1994)............................................................................18, 19

*Dawson v. Bumble & Bumble*,
  398 F.3d 211 (2d Cir. 2005)...................................................................................6

*In re Domino's Pizza Inc.*,
  2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018)..............................................13, 14

*Evans v. McDonald's Corp.*,
  936 F.2d 1087 (10th Cir. 1991) .............................................................................9

*Felder v. United States Tennis Ass'n Inc.*,
  2018 WL 5621484 (S.D.N.Y. Oct. 30, 2018) ...............................................6, 8, 9

*Gonzaga v. Rudin Mgmt. Co.*,
  2016 U.S. Dist. LEXIS 99019 (S.D.N.Y. July 20, 2016) ......................................6

*Hart v. Rick's Cabaret Intern., Inc.*,
  967 F. Supp. 2d 901 (S.D.N.Y. 2013)........................................................10, 11, 14

*Hatcher v. Augustus*,
  956 F. Supp. 387 (E.D.N.Y. 1997) ........................................................................8

*Hong Wu v. Dunkin' Donuts, Inc.*,
    105 F. Supp. 2d 83 (E.D.N.Y. 2000) ............................................................11

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013)............................................................................14

*Johnson v. St. Barnabas Nursing Home*,
    368 Fed. Appx. 246 (2d Cir. 2010)............................................................6, 17

*Kloppel v. Sears Holdings Corp.*,
    2018 U.S. Dist. LEXIS 33606 (W.D.N.Y. Feb. 28, 2018) .....................16

*In re Lehman Bros. Holdings Inc.*,
    479 B.R. 268 (S.D.N.Y. 2012), *aff'd*, 513 Fed. Appx. 75 (2d Cir. 2013) ..............21

*Liotard v. FedEx Freight Corp.*,
    2016 WL 1071034 (S.D.N.Y. 2016)............................................................8

*London v. NYS Dep't of Homeless Servs.*,
    2014 U.S. Dist. LEXIS 103500 (S.D.N.Y. July 29, 2014) .....................8

*Maurer v. Chico's FAS Inc.*,
    2013 U.S. Dist. LEXIS 172121 (E.D. Mo. Dec. 6, 2013) .....................19

*Neal v. Miyares*,
    2018 U.S. Dist. LEXIS 217478 (S.D. Fla. Dec. 27, 2018) .....................7

*Ovadia v. Office of Indus. Bd. of Appeals*,
    19 N.Y.3d 138 (N.Y. 2012) ............................................................12, 13, 14

*Perry v. Burger King Corp.*,
    924 F. Supp. 548 (S.D.N.Y. 1996) ............................................................9

*Saudagar v. Walgreens Co.*,
    2019 WL 498349 (S.D.N.Y. Feb. 8, 2019)................................................ *passim*

*Savage v. Galaxy Media & Mktg. Corp.*,
    526 Fed. Appx. 102 (2d Cir. 2013)............................................................5

*Serv. Emps. Int'l Union Local 32BJ v. NLRB*,
    647 F.3d 435 (2d Cir. 2011)........................................................................8

*Skibinski v. Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, LLP.*,
    57 Fed. Appx. 900 (2d Cir. 2003)..............................................................17

*Sosa v. Medstaff, Inc.*,
    2013 U.S. Dist. LEXIS 175278 (S.D.N.Y. Dec. 12, 2013) .....................15

*South v. Saab Cars USA, Inc.*,
  28 F.3d 9 (2d Cir. 1994)..............................................................................17

*Tarta v. Nation Care, Inc.*,
  864 F. Supp. 2d 173 (D.D.C. 2012)..........................................................18

*Tiberio v. Allergy Asthma Immunology of Rochester*,
  664 F.3d 35 (2d Cir. 2011)........................................................................17

*Torres-Negron v. Merck & Co.*,
  488 F.3d 34 (1st Cir. 2007).......................................................................15

*Vollinger v. Merrill Lynch & Co.*,
  198 F. Supp. 2d 433 (S.D.N.Y. 2002)......................................................1, 5

*Vysovsky v. Glassman*,
  2007 WL 3130562 (S.D.N.Y. Oct. 23, 2007)............................................20

*Woodman v. WWOR-TV, Inc.*,
  411 F.3d 69 (2d Cir. 2005).....................................................................15, 16

*Zarda v. Altitude Express, Inc.*,
  883 F.3d 100 (2d Cir. 2018).........................................................................6

**Statutes**

New York Labor Law ............................................................................4, 10, 16, 21

New York Labor Law, Article 6, §§ 193 and 198, *et seq.*...................................2

New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(a), *et seq.* ............................1

New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ...................1, 6, 10

New York State Human Rights Law, N.Y. Exec. Law § 297(9) (2019) .....................................20

Title VII of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e *et seq.* ............................1

Wage Theft Prevention Act, New York Labor Law § 195 .......................................2, 21

**Other Authorities**

Fed. R. Civ. P. 4(m) ...........................................................................................18

Fed. R. Civ. P. 15(c) ...........................................................................................19

Fed. R. Civ. P. 15(c)(1)(C)(ii).......................................................................18, 19

Rule 12(b)(1) ..............................................................................................4, 20

Rule 12(b)(6)...........................................................................................................................5, 8

## III

## MEMORANDUM OF LAW

### A.   BACKGROUND

On or about September 10, 2018, Ms. Griffith filed an "Amended Complaint of Discrimination" with the NY State Division of Human Rights ("NYSDHR") against (1) Franchisor, (2) Coney Food Corp. ("Franchisee"), and (3) Javaid Abid, the General Manager of Franchisee. Griffith alleged that respondents terminated her employment because she was pregnant and female, failed to pay her for all hours worked, and failed to provide her with wage statements and certain written notices regarding wage/hour issues required by New York law. [Doc. 11-1, ¶ 23, 25, 35-37]. Shortly thereafter, Griffith received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") dated March 8, 2019.[1] [Doc. 11-2].

On March 20, 2019, Plaintiff commenced this action by filing a complaint against Franchisee and Mr. Abid—but not Franchisor—raising claims similar to those in the Amended Complaint of Discrimination she had filed with the NYSDHR. [Doc. 1]. On July 16, 2019—after Franchisee defaulted and Plaintiff was unable to serve Abid—Griffith filed the Amended Complaint, for the first time adding Franchisor as a Defendant. [Doc. 14]. At this point, 130 days had passed since she received her Notice of Right to Sue. [Doc. 11-2].

Plaintiff brings four sets of claims against Franchisor. First, she sues for pregnancy and gender discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e *et seq.* ("Title VII"); (2) the New York State Human Rights Law, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); and (3) the New York City Human Rights Law, New York City Administrative Code Section 8-502(a), *et seq.* ("NYCHRL"). [*Id.*, ¶¶ 3, 51,

---

[1] "Under the terms of a Worksharing Agreement between the EEOC and the New York State Division of Human Rights ("State Division"), the EEOC operates as an agent of the State Division for purposes of accepting charges of discrimination." *Vollinger v. Merrill Lynch & Co.*, 198 F. Supp. 2d 433, 436 (S.D.N.Y. 2002).

52].  Second, she contends Franchisor violated the New York Labor Law, Article 6 ("NYLL"), Sections 193 and 198, *et seq*., by failing to pay earned wages. [*Id.*, ¶¶ 4, 61, 62, 96].  Third, she alleges "Defendants" failed to provide her with written notice of certain wage/hour information required under the Wage Theft Prevention Act, NYLL Section 195, *et seq.*, such as her "regular rate of pay, overtime rate of pay, how she was to be paid, her 'regular payday,' the official name of the employer and any other names used for business, [and] the address and phone number of the employer's main office or principal location."  [*Id.*, ¶¶ 5, 64, 65, 99].  Fourth, she alleges "Defendants" "failed to provide Plaintiff with any wage statements" pursuant to NYLL Section 195.  [*Id.*, ¶¶ 5, 64, 67].

The Amended Complaint is ambiguous as to who employed Plaintiff. Griffith recently secured a default judgment against Franchisee on the basis that it was her employer. Now, however, she alleges: "[a]t all times relevant hereto, Plaintiff was an employee of [Franchisee] and/or [Franchisor]."  [Doc. 14, ¶ 37].  Despite her recent attempt to impose liability on Franchisor, she admits that Franchisee "own[ed] and operate[d]" the restaurant at which she worked.  [*Id.*, ¶ 14].  She also admits that Franchisee or Mr. Abid "had the power to hire and fire [her], controlled the terms and conditions of her employment, and determined the rate and method or any compensation in exchange for [her] services."  [*Id.*, ¶¶ 22, 36, 51, 52].  Plaintiff does ***not*** allege that Franchisor (1) owned and operated the restaurant or (2) had the power (a) to hire and fire her, (b) control her conditions of employment, or (c) determine her rate of pay.  [*See generally* Doc. 14].

Nevertheless, Plaintiff contends Franchisor was—or was also—her "employer," or her "joint employer," because Franchisor allegedly (1) "permitted [her] to work," (2) "ha[d] an economic interest the Checkers location in which [she] worked," (3) "benefitted from [her]

2

work," (4) "had either functional and/or formal control over the terms and conditions of [her] work," and (5) "[she] performed work integral to Franchisor Defendant's operation." [*Id.*, ¶¶ 19, 20, 21, 29]. In support of the conclusion that Franchisor was her joint employer, she alleges Franchisor: (1) approves the appointment of restaurant managers, but not of lower-level employees like Plaintiff; (2) maintains the "point of sale ('POS') system;" (3) "supervises the opening" of franchisees; (4) sets standards for the appearance, operations, and advertising of Franchisees; (5) provides Franchisees with materials on how to hire and train employees; (6) requires new franchisees—but not their employees—to complete a five-week training course; (7) specifies "equipment, uniforms . . . supplies," and "procedures" that employees must use; (8) requires franchisees to use recordkeeping systems that track hours, wages, and retain payroll records; (9) "had the right to inspect" and "audit" franchisees; and (10) had the right to terminate franchise agreements if franchisees violated the law.[2] [*Id.*, ¶¶ 23-34].

**B.    LEGAL ARGUMENT**

**1.    Summary Of The Argument**

The Amended Complaint should be dismissed as to Franchisor because Griffith does not plausibly allege Franchisor was her employer or joint employer, as required for liability under all Plaintiff's causes of action. The Amended Complaint acknowledges that Franchisee owned and operated the restaurant, paid Plaintiff's wages, and had the power to hire or fire non-managerial employees, administer discipline, or otherwise control the terms and conditions of Plaintiff's employment. Tellingly, Griffith fails to make any such allegations as to Franchisor. She also fails to allege any facts that could plausibly lead to vicarious liability on behalf of Franchisor. Even assuming *arguendo* that Plaintiff could establish Franchisor was a joint employer, that

---

[2] The Amended Complaint sometimes presents the preceding allegations in the present tense, and sometimes in the past tense.

would only affect each employer's (i.e., Franchisee and Franchisor) liability to the employee (Griffith) for its own actions, not for the other's actions.  An employee must still allege a factual basis for liability.  In this case, Plaintiff has not done so.  Griffith fails to allege that Franchisor knew she was pregnant, female, or was terminated, nor does she allege Franchisor had any input into her termination.  Similarly, she fails to allege Franchisor withheld wages, knew that Franchisee had done so, or knew that Franchisee was not providing the wage/hour notices and paystub information to which Griffith was allegedly entitled under the New York Labor Law.

In addition, Plaintiff's Title VII claim is untimely because she sued Franchisor more than 90 days after she received her Notice of Right to Sue, and her discrimination claims under state and municipal law are barred by the election-of-remedies doctrine because she pursued relief through the administrative process before filing this action.  Griffith's claim for unpaid wages should be dismissed because she fails to allege she was party to a contract with Franchisor for the payment of wages, which is a required element for recovery under the NYLL.  Because Franchisor had no duty to pay Plaintiff's wages, there is no legal basis for this Court to find Franchisor had a duty to provide the wage/hour notices or paystub information Griffith complains she was denied.

For all these reasons, Plaintiff's claims against Franchisor should be dismissed.

2.   **Legal Standards**

a.  **Motions To Dismiss Under Rule 12(b)(1)**

"Rule 12(b)(1) permits a party to move to dismiss a complaint for lack of subject-matter jurisdiction.  A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Saudagar v. Walgreens Co.*, 2019 WL 498349, at *6 (S.D.N.Y. Feb. 8, 2019) (internal quotation

marks and citations omitted). Jurisdictional challenges may be "facial" or "fact-based." *Id.* In the latter scenario, the defendant "proffer[s] evidence beyond the complaint and its exhibits," and the burden is on the plaintiff to "come forward with evidence of [her] own to controvert that presented by the defendant." *Id.*

### b. Motions To Dismiss Under Rule 12(b)(6)

"In order to survive a motion to dismiss" under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

> "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A plaintiff does not meet the plausibility standard by pleading facts "merely consistent with a defendant's liability."

*Savage v. Galaxy Media & Mktg. Corp.*, 526 Fed. Appx. 102, 104 (2d Cir. 2013) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (citations omitted). Normally, when passing on a motion to dismiss, "the court must limit itself to 'a consideration of the facts that appear on the face of the complaint.'" *Vollinger v. Merrill Lynch & Co.*, 198 F. Supp. 2d 433, 437-38 (S.D.N.Y. 2002) (*quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). "[H]owever . . . the court can consider any documents attached to the complaint as exhibits or incorporated into the complaint by reference. . . . [T]he court may also consider any documents upon which a plaintiff 'solely relies' and which are 'integral' to its claims," *id.* (internal citations omitted)*,* or "public records of which the Court can take judicial notice." *Saudagar*, 2019 WL 498349, at *3. Accordingly, where, as here, a defendant moves to dismiss a plaintiff's claims of discrimination because they are time-barred or otherwise procedurally defective in light of the chronology or content of required pre-suit

administrative filings between the plaintiff and state or federal agencies, courts must consider the pre-suit filings when ruling on the defendant's motion.  *Id.* (granting motion to dismiss because plaintiff's claim was untimely in light of pre-suit filings) (internal citations omitted); *Gonzaga v. Rudin Mgmt. Co.*, 2016 U.S. Dist. LEXIS 99019, at *9 (S.D.N.Y. July 20, 2016)[3] (same).

### 3.   Franchisor Was Not Plaintiff's Employer Or Joint Employer.

### a.  Employment Status Under Antidiscrimination Laws

One court recently summarized the legal standards governing employer/employee status under Title VII as follows:

> To hold an employer liable for unlawful employment practices under Title VII, an employer-employee relationship must have existed between the parties at the time of the alleged unlawful conduct. . . .  Title VII, by its terms, applies only to "employees," 42 U.S.C. § 2000e(f).  The Supreme Court has ruled that the definitions of "employee," "employer," and "employment" are to be determined under the common law of agency whenever statutes have failed to specifically define them. . . .  The initial requirement under the common law agency test of employment is a "threshold showing that the company hired and compensated a plaintiff. . . .

*Felder v. United States Tennis Ass'n Inc.*, 2018 WL 5621484, at *4 (S.D.N.Y. Oct. 30, 2018) (some internal quotation marks and citations omitted). Where a plaintiff does not allege that a defendant hired or compensated her, then, as a matter of law—and on that basis alone—the defendant was not her employer.  *Id.* (granting defendant's motion for judgment on the pleadings, reasoning, "[Plaintiff] has not alleged that the [defendant] hired or compensated him, and thus he is not an employee of Defendant under the common law agency test.").  These standards apply also to state- and municipal-law claims under the NYCHRL and NYSHRL, as they are subject to the same analysis as Title VII claims.  *See, e.g.*, *Dawson v. Bumble & Bumble*,

---

[3] In *Gonzaga*, the court dismissed an action brought under the Americans with Disabilities Act, which has the same pre-suit administrative requirements as Title VII.  *See Johnson v. St. Barnabas Nursing Home*, 368 Fed. Appx. 246, 248 (2d Cir. 2010).

398 F.3d 211, 224 (2d Cir. 2005), *overruled on other grounds by Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018).

In this case, Plaintiff alleges that only Franchisee and Abid—not Franchisor—"had the power to hire and fire [her], controlled the terms and conditions of her employment, and determined the rate and method or any compensation in exchange for [her] services." [Doc. 14., ¶¶ 22, 36]. Furthermore, Griffith alleged that Abid, not Franchisor, was the Defendant who paid or withheld the wages owed. [*Id.*, ¶¶ 61, 62]. According to the Amended Complaint, Franchisor was involved in the hiring process only to the extent it "control[led] and/or approve[d] the appointment of *management level* employees of [Franchisee]," [*Id.*, ¶ 23] (emphasis added), and was involved in paying Plaintiff only to the extent it "require[d] [Franchisee] [to] employ recordkeeping of the operation, including specific systems for tracking hours and wages, and for retaining payroll records." [*Id.*, ¶ 32]. Significantly, Plaintiff makes only generalized statements such as, "*Defendants* interviewed and hired Plaintiff," and "*Defendants* failed to pay Plaintiff her wages for all hours worked" [*id.*, ¶¶ 39, 55] (emphasis added). However, those statements are not entitled to the presumption of truth because they are legal conclusions that are inconsistent with the specific factual allegations in the Amended Complaint. *See, e.g.*, *Neal v. Miyares*, 2018 U.S. Dist. LEXIS 217478, at *28 (S.D. Fla. Dec. 27, 2018) ("factually inconsistent [allegations] fail[ed] to state a claim of excessive force as a matter of law and warrant[ed] dismissal"); *see also Bui v. Minority Mobile Systems, Inc.*, 2016 WL 344969 (S.D. Fla. Jan. 28, 2016) (disregarding plaintiffs' affidavits on summary judgment where they contained "conclusory statements" and were "internally inconsistent"). Indeed, Griffith expressly quotes Abid as stating to her, "had *I* known you were pregnant, *I* wouldn't have hired you." [*Id.*, ¶ 51] (emphasis added).

7

Apparently aware that she cannot satisfy the employment test as to Franchisor, Plaintiff

also alleges Franchisor was her "joint employer." [Doc. 14, ¶¶ 19, 20, 21, 29].

> A plaintiff may also attempt to assert employer liability against an entity that is not formally his or her employer under the . . . "joint employer" doctrine[]. . . . .
>
> . . . . A determination that a third-party entity is acting as joint employer requires "sufficient evidence of *immediate control* over the employees." [*Liotard v. FedEx Freight Corp.*, 2016 WL 1071034, at *4 (S.D.N.Y. 2016) (*quoting Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132, 138 (2d Cir. 1985))]. The Second Circuit has identified five factors that bear on the "immediate control" inquiry: "whether the alleged joint employer (1) did the hiring and firing; (2) *directly* administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) *directly* supervised the employees; or (5) participated in the collective bargaining process." *Id.* . . . .

*Felder v. United States Tennis Ass'n Inc.*, 2018 WL 5621484, at *4 (S.D.N.Y. Oct. 30, 2018)

(some internal quotation marks and citations omitted, emphasis added); *see also Serv. Emps. Int'l*

*Union Local 32BJ v. NLRB*, 647 F.3d 435, 442-43 (2d Cir. 2011) (same). If a plaintiff fails to

plead ultimate facts that would establish a joint employment relationship, then the action is

subject to dismissal under Rule 12(b)(6). *See, e.g.*, *London v. NYS Dep't of Homeless Servs.*,

2014 U.S. Dist. LEXIS 103500, at *19-20 (S.D.N.Y. July 29, 2014) (granting motion to dismiss

Title VII complaint as to alleged joint employer where plaintiff did not "assert[] any factual

allegation in his complaint establishing that [the alleged joint employer and its manager] had any

authority to fire, supervise, or punish him," despite plaintiff's allegations that: (1) he was

"working for and taking orders" from the purported joint employer, (2) he was required to take a

ten-hour training course with the supposed joint employer, (3) was subject to regular inspections

by the alleged joint employer, and (4) convinced his direct employer to fire him).

Applying these standards, courts in this Circuit have held that franchisors are not liable

for discrimination perpetrated by franchisees. *See Hatcher v. Augustus*, 956 F. Supp. 387, 392

(E.D.N.Y. 1997) (franchisor was not joint employer under Title VII where franchisor did not operate the store and the franchisee "exclusively possessed the rights and responsibilities regarding all employment matters and the day-to-day operations in his store, and his relationship with the plaintiff as his employee") (collecting cases from other jurisdictions); *Perry v. Burger King Corp.*, 924 F. Supp. 548, 554 (S.D.N.Y. 1996) (franchisor not liable for alleged discrimination under 42 U.S.C. § 1981 where it did not own franchisee or exercise day-to-day control over franchisee's operations) (collecting cases). Courts in other jurisdictions have reached the same result. *See, e.g.*, *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991) (franchisor not liable for franchisee's discrimination as joint employer despite stringent control of manner of operations, frequent inspections, and training of franchisee employees, where franchisor did not have control of franchisee's labor operations).

This case presents no exception to this line of authority. As discussed above, Plaintiff alleges that only Franchisee and Abid had control over hiring and firing.  In fact, Plaintiff expressly alleges that it was Mr. Abid, *not* Franchisor, who terminated her.  [Doc. 14, ¶¶ 51, 52] ("Soon thereafter, Plaintiff received a phone call from *Defendant ABID*. During the phone call *Defendant ABID* fired Plaintiff because she was pregnant. . . .  Later that day, Plaintiff sent *Defendant ABID* a text message to confirm that she was being terminated due to her pregnancy. *Defendant ABID* confirmed that *he* was firing her because she was pregnant."  (emphases added)).   Similarly, Plaintiff does not allege that Franchisor "directly administered any disciplinary procedures," "maintained records of hours," "handled the payroll," "provided insurance," "directly supervised the employees," or "participated in the collective bargaining process." *Felder*, 2018 WL 5621484, at *4 (emphases added).   In short, even accepting all of

the well-pled allegations of the Amended Complaint as true, Franchisor was not Plaintiff's

employer or joint employer under Title VII, the NYSHRL, or the NYCHRL as a matter of law.

### b. Employment Status Under Wage/Hour Laws

Under Article 6 the New York Labor Laws—as under Title VII—there can be no liability

in the absence of an employer/employee relationship.[4]   To determine whether that relationship

exists,

> New York courts apply the "common law" test—a test used not only in
> connection with wage-protection statutes, but also to determine such issues
> as *respondeat superior* liability in tort suits, eligibility for unemployment
> benefits, and compliance with tax laws.   Although substantially similar to the
> [joint employment test under the Fair Labor Standards Act ("FLSA")], . . .   the
> common law focuses more on the degree of control exercised by the purported
> employer, as opposed to the economic reality of the situation.   Specifically, the
> New York Court of Appeals has stated that "the critical inquiry in determining
> whether an employment relationship exists pertains to the degree of control
> exercised by the purported employer over the results produced or the means
> used to achieve the results."   *Bynog v. Cipriani Grp., Inc.,* 1 N.Y.3d 193, 198,
> 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003); *see Matter of Ted Is Back
> Corp.,* 64 N.Y.2d 725, 726, 485 N.Y.S.2d 742, 475 N.E.2d 113 (1984) ("control
> over the means is the most important factor to be considered when analyzing an
> employment relationship"); *see also In re Hertz Corp.,* 2 N.Y.3d 733, 735, 778
> N.Y.S.2d 743, 811 N.E.2d 5 (2004) ("An employer-employee relationship exists
> when the evidence demonstrates that the employer exercises control over the
> results produced by claimant or the means used to achieve the results."
> (*citing Matter of 12 Cornelia St.,* 56 N.Y.2d 895, 897, 453 N.Y.S.2d 402, 438
> N.E.2d 1117 (1982))).
>
> The New York Court of Appeals has articulated five factors relevant to
> determining control under the common law test.   They are whether the worker (1)
> worked at his/her own convenience; (2) was free to engage in other employment;
> (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a
> fixed schedule. *Bynog,* 1 N.Y.3d at 198, 770 N.Y.S.2d 692, 802 N.E.2d 1090; . . .
> .

*Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 923–24 (S.D.N.Y. 2013) (some internal

citations and quotation marks omitted).   These factors are not exhaustive, however, and New

---

[4] The statutory definitions of "employer" and "employee" do not provide guidance because they are circular. *See
Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 922 (S.D.N.Y. 2013).

York courts often consider additional factors, such as whether the purported employer had the right to (1) "decide the timing and selection of each job," (2) "discharge or fire the employee," (3) approve or deny the employee's requests for vacation time, or (4) issue directives to the employee on a "central dispatch system." *Id.* (collecting cases). Regardless, "the critical determinant is the degree to which the purported employer exercises control in fact over the results produced or the means used to obtain them." *Id.* (*quoting Edwards v. Publishers Circulation Fulfillment, Inc.,* 268 F.R.D. 181, 184 (S.D.N.Y. 2010) (*citing Bynog,* 1 N.Y.3d at 198, 770 N.Y.S.2d 692, 802 N.E.2d 1090).

At common law, New York courts have held—nearly unanimously—that franchisors are not the employer of their franchisees' workers as a matter of law. *See, e.g.*, *Andreula v. Steinway Baraqafood Corp.*, 243 A.D.2d 596, 668 N.Y.S.2d 891 (N.Y. App. Div., 2d Dep't 1997) (Dunkin' Donuts not liable for accident involving delivery truck operated by employee of Dunkin' Donuts' franchisee where franchisee did not hire the driver, maintain control over the franchisee's hiring practices, or control this aspect of franchisee's business); *Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83 (E.D.N.Y. 2000) (franchisor not liable for alleged torts of franchisee where franchisor did not exercise day-to-day control over franchisee's operations) (collecting eleven New York cases reaching the same result, on page 88). The *Hong Wu* court summarized the state of American jurisprudence on this issue as follows: "As in New York, the franchisor typically is found to be vicariously liable only in situations where it exercised considerable control over the franchisee and the specific instrumentality at issue in a given case. Most courts have found that retaining a right to enforce standards or to terminate an agreement for failure to meet standards is not sufficient control. A right to reenter premises and inspect also generally does not give rise to a legal duty." *Id.* at 88.

11

In a similar vein, the New York Court of Appeals has held as a matter of law that construction contractors should not be deemed the employers of their subcontractors under the NYLL except in unusual circumstances.  *See Ovadia v. Office of Indus. Bd. of Appeals*, 19 N.Y.3d 138, 145 (N.Y. 2012).  The court found it irrelevant that the contractor "provided the work site and materials used by the workers to perform their tasks," reasoning that "this is a common occurrence at construction sites."  *Id.* at 144.  The Court also noted that although the contractor "frequently visited the work site, he did not give directions or instructions to the laborers but communicated only with [the subcontractor's principal] or the foreman."  *Id.* "Inasmuch as a general contractor is expected to conduct routine quality control inspections and ensure that the coordination and sequencing of the work proceeds on schedule," the court found "this fact does not render the general contractor an employer of all workers at the job site."  *Id.* at 144, 145.

Applying these standards to this case, Griffith does not plausibly allege that Franchisor was her employer. Plaintiff simply does not satisfy the *Bynog* factors discussed above:  She was *not* on Franchisor's payroll, did *not* receive fringe benefits from Franchisor, and Franchisor did *not* set Plaintiff's schedule.  While Franchisor may prescribe some of the materials Franchisee must use for certain tasks—as in *Ovadia*—this is a common occurrence among franchisors/franchisees and therefore not probative of whether there is an employment relationship.  Also as in *Ovadia*, Franchisor did not exert control directly over Griffith or other franchisee employees. Instead, Franchisor interfaced solely with Franchisee, which affected Franchisee's employees only to the extent that Franchisor required Franchisee to maintain certain production methods and quality standards.  As a matter of law, these facts do not render Franchisor liable for the unpaid wages its franchisees might owe to their employees.

Against this, Plaintiff might argue that in assessing whether Franchisor was her employer under the NYLL, the Court should apply the "economic realities" test applicable to the FLSA, rather than the New York common law test discussed above.  Under the economic realities test, courts first determine whether the purported employer exercised formal control over the employee by assessing the following factors:  "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *In re Domino's Pizza Inc.*, 2018 WL 4757944, at *5 (S.D.N.Y. Sept. 30, 2018).  If those factors do not mitigate in favor of an employment relationship, then some courts consider whether the purported employer nevertheless exercised "functional control" with reference to the following additional factors:

> "(1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the] plaintiffs performed a discrete line job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised [the] plaintiffs' work; and (6) whether [the] plaintiffs worked exclusively or predominantly for the alleged employers."

*Id.* at *7.

Although some courts have applied the FLSA's economic realities test to determine whether an employment relationship existed under the NYLL, this line of caselaw was definitively rejected by the New York Court of Appeals in *Ovadia.  See* 19 N.Y.3d at 145 (reversing lower court's finding of joint employment, which had resulted from application of the economic realities test, holding the lower court "erred as a matter of law in relying on these particular factors in reaching its determination of joint employment").  Still, it seems that not all

13

federal courts are aware of *Ovadia*, which has led to some confusion as to the applicable standard.[5] Regardless, courts have commented that the economic realities test is "substantially similar" to the common-law test applicable to the NYLL, except that "the common law focuses more on 'the degree of control exercised by the purported employer,' as opposed to the 'economic reality of the situation.'" *Hart*, 967 F. Supp. 2d at 923 (*quoting Browning v. Ceva Freight, LLC,* 885 F.Supp. 2d 590, 599 (E.D.N.Y. 2012)). Accordingly, even courts erroneously applying the economic realities test under the NYLL have found that franchisors do not employ the workers of franchisees. *See, e.g.*, *In re Domino's Pizza Inc.*, 2018 WL 4757944, at *4 (granting franchisor's motion for summary judgment, reasoning, "[t]hough the Second Circuit has not yet applied the joint employer factor test to determine whether a franchisor can be held liable as a joint employer, other courts have concluded that the type of standard setting and oversight exercised by a franchisor does not rise to the requisite level of control to constitute joint employer status. . . . Indeed, Plaintiffs were unable to point to a single case in which a franchisor was held liable as a joint employer under FLSA.") (collecting six cases).

### 4.   Even If Franchisor Were Plaintiff's Joint Employer, Plaintiff Alleges No Basis for Franchisor's Liability.

Even if Franchisor were Griffith's joint employer, that would not end the inquiry:

> [J]oint-employer liability does not by itself implicate vicarious liability. The basis for the finding that two companies are "joint employers" is that "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Rivas v. Federacion de Asociaciones Pecuaria de P.R.*, 929 F.2d 814, 820 n.17 (1st Cir. 1991) (*quoting NLRB* v. *Browning-Ferris Indus., Inc.*, 691 F.2d 1117, 1122-23 (3d Cir. 1982)). "[T]he 'joint employer' concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those conditions of employment." *Id.* (emphasis in original). *Thus,*

---

[5] Nearly a year after *Ovadia* was decided, the Second Circuit stated, "Plaintiffs assert that the tests for 'employer' status are the same under the FLSA and the NYLL, but *this question has not been answered by the New York Court of Appeals*." *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013) (emphasis added).

> *a finding that two companies are an employee's "joint employers" only affects each employer's liability to the employee for their own actions, not for each other's actions . . . . See Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1359-63 (3d Cir. 1994) (holding that two companies were joint employers and therefore liable to the employee, but using agency principles to determine the extent of one employer's liability for the other employer's actions).

*Torres-Negron v. Merck & Co.*, 488 F.3d 34, 40 n.6 (1st Cir. 2007) (some emphases added, others in original) (quoted by *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 122 (E.D.N.Y. 2009)); *see also Sosa v. Medstaff, Inc.*, 2013 U.S. Dist. LEXIS 175278, at *8, *9 (S.D.N.Y. Dec. 12, 2013) (where plaintiff worked for a staffing company and was placed at a medical college, the court dismissed the Title VII claims against staffing agency, finding that even if the staffing agency was plaintiff's joint employer, there was no basis on which to hold it liable for the alleged discrimination, because only the medical college and its agents were alleged to have made any discriminatory comments and there was no assertion that the discrimination occurred with the staffing agency's knowledge).

For example, in *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005), a 61-year-old sued Fox Television Stations, Inc. ("Fox") for age discrimination after Fox directed her former employer, a local television station, to terminate her in the lead up to Fox's acquisition of the local station. *Id.* at 71, 72. The Second Circuit granted summary judgment to Fox based on a finding that Fox had no actual knowledge of the plaintiff's age when it directed her termination. *Id.* at 89, 90. The court "rejected [plaintiff]'s argument that the 'joint employer' doctrine could be used to impute [the local station]'s knowledge of her age to the Fox executives who made the termination decision," *id.* at 75, 89, and reasoned as follows:

> [The local station]'s knowledge of [the plaintiff]'s age cannot reasonably be imputed to Fox unless [the local station] communicated that information to the Fox decision-makers who actually made the discharge decision or unless [the local station] itself played a decision-making role in that discharge. As we recently explained in *Dawson v. Bumble & Bumble*, 398 F.3d at 224-25, *an*

> *employer's intent to discriminate must be evaluated by reference to the decision-maker actually ordering the adverse employment action, not to other persons in the company. . . .* For reasons already discussed, we conclude that [the plaintiff] has failed to adduce evidence of any communication from [the local station] to Fox decision-makers that revealed her age.

*Id.* at 89 (emphasis added, some citations omitted). These principles equally apply to claims under New York's wage/hour statutes. *Kloppel v. Sears Holdings Corp.*, 2018 U.S. Dist. LEXIS 33606, at *18 (W.D.N.Y. Feb. 28, 2018) (dismissing claim for unpaid wages against joint employer where, according to the complaint, the "[direct employer] [wa]s the only defendant that improperly deducted from Plaintiffs' paychecks and withheld wage statements," and "Plaintiffs fail[ed] to allege that [the joint employer] knew of or participated in [the direct employer]'s alleged illegal acts.").

In this case, even if Franchisor were Plaintiff's joint employer, Griffith fails to allege that Franchisor even knew she was pregnant, female, or was terminated. Nor does she allege Franchisor had any input into her termination. Similarly, Plaintiff fails to allege Franchisor withheld wages, knew that Franchisee had done so, or knew that Franchisee was not providing her the wage/hour notices and paystub information to which she was allegedly entitled under the New York Labor Law.

### 5.   Plaintiff's Title VII Claim Is Time-Barred.

Plaintiff's Title VII claims against Franchisor are untimely because she sued Franchisor more than ninety days after receiving from the EEOC a notice of right to sue.

> An employment discrimination suit brought under Title VII must be filed within 90 days of a plaintiff's receipt of a "right to sue" letter from the EEOC.  42 U.S.C. § 2000e-5[(f)(1)] . . . .  Title VII's time limitation is analogous to a statute of limitations.  This requirement should be strictly enforced and not extended "by even one day." *Holmes v. NBC/GE*, 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) . . . .  A plaintiff's failure to file a claim within the time limits set by Title VII . . . will ordinarily preclude [her] from pursuing that claim in

> federal court, and can warrant dismissal pursuant to Federal Rule of Civil
> Procedure 12(b)(6).

*Saudagar*, 2019 WL 498349, at *4 (some citations, quotations, and alterations omitted, some

alterations added).  Accordingly, where it appears that a complaint was filed more than ninety

days after the plaintiff's receipt of a notice of right to sue, then the complaint must be dismissed

for failure to state a claim upon which relief can be granted.  *See, e.g.*, *Baldwin County Welcome*

*Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (affirming dismissal of Title VII action under Fed. R.

Civ. P. 12(b)(6) because plaintiff filed suit more than ninety after receiving her notice of right to

sue) (per curiam); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir.

2011) (same); *Johnson v. St. Barnabas Nursing Home*, 368 Fed. Appx. 246, 248 (2d Cir. 2010)

(same, affirming judgment on pleadings); *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 10 (2d Cir.

1994) (same, reversing trial court's denial of motion to dismiss under Fed. R. Civ. P. 12(b)(6));

*Skibinski v. Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, LLP.*, 57 Fed. Appx. 900,

901 (2d Cir. 2003) (same, affirming dismissal of claim for disability discrimination).

In this case, Plaintiff's right-to-sue letter is dated March 8, 2019. [Doc. 11-2].  "A

plaintiff is presumed to have received a Right to Sue letter three days after its mailing," so

Plaintiff received the letter on March 11, 2019.  *See Bray v. New York City Dept. of Educ.*, 11

CIV. 7884 DLC, 2013 WL 3481532, at *7 (S.D.N.Y. July 10, 2013) (*citing Sherlock v.*

*Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996)); Tiberio, 664 F.3d 35, 37 (finding

plaintiff received right-to-sue letter three days after it was mailed where "the Complaint state[d]

that [she] actually received the right-to-sue-letter but d[id] not specify the date of receipt").

However, Griffith did not sue Franchisor until 127 days later, on July 16, 2019.  [Doc. 14].

Plaintiff's Title VII claim is therefore untimely.

Against this, Plaintiff will likely argue that her Title VII claim against Franchisor relates back to her original complaint, which was timely filed on March 20, 2019. [Doc. 1]. However, the argument must be rejected.

> Federal Rule of Civil Procedure 15(c) governs when an amended pleading "relates back" to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations. Rule 15(c) imposes three requirements before an amended complaint against a newly named defendant may relate back to the original complaint: (1) the claim against the newly named defendant must have arisen "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), (C); (2) the newly named defendant must have "received such notice of the action that it will not be prejudiced in defending on the merits" within the period provided by Rule 4(m) for service of the summons and complaint (which is ordinarily [90] days from when the complaint is filed, *see* Rule 4(m)), Rule 15(c)(1)(C)(i); and (3) the plaintiff must show that, within the Rule 4(m) period, the newly named defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[ 6]

*Tarta v. Nation Care, Inc.*, 864 F. Supp. 2d 173, 178-79 (D.D.C. 2012) (some quotation marks and internal citations omitted). Griffith fails to meet two of these requirements. First, Griffith failed to allege, and cannot in good faith allege, that Franchisor received notice of Plaintiff's Title VII claim within Rule 4(m)'s 90-day period after the complaint was filed. Fed. R. Civ. P. 4(m), 15(c)(1)(C). Second, Griffith's failure to name Franchisor in the original complaint was clearly not the result of a mistake concerning Franchisor's identity, Fed. R. Civ. P. 15(c)(1)(C)(ii), because Plaintiff had named Franchisor as a respondent in her pre-suit complaint to the NYSDHR. [Doc. 11-1].

The instant case is analogous to *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994), where the plaintiff timely sued only her employer for discrimination, although the complaint identified several supervisory personnel who had also mistreated her. *Id.* at 704. Later, after the statute of

---

6 The opinion actually states that Rule 4(m) provides for service within 120 days after the complaint is filed, but the rule has since been amended to shorten the time.

limitations had run, she filed an amended complaint adding the supervisory personnel as defendants. *Id.* The Second Circuit held that the claims against the supervisory personnel were untimely and did not relate back to the original complaint pursuant to Rule 15(c). *Id.* at 704, 705. The court reasoned as follows:

> . . . [W]e think it abundantly clear that [Rule 15(c)(1)(C)(ii)] was not satisfied. The requirement that a new defendant "knew" he was not named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity. [The plaintiff], however, does not allege that she would have named the individual appellants as defendants in her original complaint but for a mistake concerning identity. Nor, in light of the record in the present case, would such an assertion be tenable. Plainly she knew the identities of the [defendant's] employees who she contended had harassed and discriminated against her. Further, an exhibit to the original complaint identified those individuals and set out details of their alleged misconduct. [The plaintiff] was not required to sue them, and her failure to do so in the original complaint, in light of her obvious knowledge and the detailed nature of that pleading's exhibit, must be considered a matter of choice, not mistake.

*Id.* at 705; *see also Maurer v. Chico's FAS Inc.*, 2013 U.S. Dist. LEXIS 172121, at *12 (E.D. Mo. Dec. 6, 2013) (Title VII plaintiff's amended pleading, which added new defendants, did not relate back to original pleading because he clearly knew the new defendants' identities when he filed the original pleading; he had named them as respondents in his pre-suit charge of discrimination).

### 6.    Plaintiff's Claims Under State And Municipal Law Are Barred By Her Earlier Election Of An Administrative Remedy.

The Plaintiff's state-law discrimination claims are barred by the "election of remedies doctrine" because Griffith previously filed a complaint with the NYSDHR premised on the same factual allegations as the Amended Complaint. *Compare* [Doc. 11-1], *with* [Doc. 14]. The Southern District of New York explains the applicable legal standards as follows:

> Under the so called 'election of remedies' doctrine, a complainant who files a complaint with either the NYSDHR or the New York City Commission on

Human Rights (the "NYCCHR") cannot subsequently sue in court on the same claims. . . .

. . . .

The election of remedies doctrine imposes two kinds of jurisdictional bars: direct and derivative.  The direct bar divests courts of subject matter jurisdiction over any claims previously submitted to the NYSDHR or NYCCHR . . . .  And the derivative bar prevents courts from hearing claims arising out of the same incidents on which an NYSDHR or NYCCHR complaint was based.  Because of this derivative bar, claims need not be identical in order to be barred by the state or city election of remedies provisions.  To the contrary, if there is a sufficient identity of issues between the claims a plaintiff pursued before the NYSHRL or NYCCHR, and those he alleges in a federal complaint, then the election of remedies doctrine precludes courts from adjudicating those federal claims. . . .

The derivative bar is expansive:  A plaintiff cannot escape the bar by raising a new legal theory, if that theory is premised on the same events underlying his NYSDHR or NYCCHR complaint.

*Saudagar*, 2019 WL 498349, at *7 (*citing*, e.g., N.Y. Admin. Code § 8-502(a)) (alterations in original, citations omitted); *see also* N.Y. Exec. Law § 297(9) (2019).  Critically, "[t]he election of remedies bar is jurisdictional; a complaint that has previously been dismissed by the NYSDHR or NYCCHR must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)."  *See, e.g.*, *id* (internal quotation marks and citation omitted).  Accordingly, Plaintiff's state-law discrimination claims must be dismissed.

**7.    The NYLL Claims Fail Because Plaintiff Fails To Allege A Contract Between Herself And Franchisor For The Payment Of Wages.**

"[A] plaintiff cannot assert a statutory claim for wages under the Labor Law if [s]he has no enforceable contractual right to those wages."  *Vysovsky v. Glassman*, 2007 WL 3130562, at *13 (S.D.N.Y. Oct. 23, 2007) (holding delivery drivers could not recover unpaid wages from their employer under the NYLL if their entitlement thereto was based on an oral contract rendered void by the statute of frauds) (*quoting Tierney v. Capricorn Investors, L.P.,* 592 N.Y.S.2d 700, 703 (1st Dep't 1993)), *vacated and remanded sub nom. on other*

*grounds, Kroshnyi v. U.S. Pack Courier Services, Inc.*, 771 F.3d 93 (2d Cir. 2014).[7]  Where, as here, the plaintiff does not allege that she and the defendant were parties to a contract for the payment of wages, she cannot state a claim under the NYLL.  *In re Lehman Bros. Holdings Inc.*, 479 B.R. 268, 280 (S.D.N.Y. 2012), *aff'd*, 513 Fed. Appx. 75 (2d Cir. 2013) (affirming order granting motion to dismiss complaint for unpaid wages under NYLL § 193 brought against an acquirer who entered into an asset purchase agreement with the plaintiffs' original, bankrupt employer, reasoning that the plaintiffs were not parties to, or third-party beneficiaries of, the asset purchase agreement, nor did the acquirer otherwise assume the obligation to pay the wages owed under plaintiff's employment contracts with their former employer).  Furthermore, because Franchisor had no contractual duty to pay wages to Griffith, there is no legal basis for this Court to conclude Franchisor had a duty to provide the wage/hour notices or paystub information Plaintiff complains she was denied under NYLL Section 195.

## III

## <u>CONCLUSION</u>

For the foregoing reasons, Franchisor respectfully requests that the Court issue an order dismissing the Amended Complaint with prejudice.

Respectfully submitted,

/s/David B. Weinstein
David B. Weinstein
N.Y. Bar No. 4844767
Email: weinsteind@gtlaw.com
Catherine H. Molloy
Fla. Bar No. 033500 (*Pro Hac Vice*)
Email: molloyk@gtlaw.com
Tristan J. Reiniers

---

[7] In *Kroshnvi*, the Second Circuit reversed the trial court's finding that the oral contracts with the drivers were void under the statute of frauds, but—critically for purposes of the instant case—the Second Circuit accepted the trial court's reasoning that enforceable contracts were a prerequisite to recovery under the NYLL. 771 F.3d at 110-111.

Fla. Bar No. 0119358 (*Pro Hac Vice*)
Email: reinierst@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard
Suite 1900
Tampa, Florida  33602
Telephone: (813) 318-5700
Facsimile:  (813) 318-5900
*Attorneys for Defendant, Checkers Drive-In
Restaurants, Inc.*

## CERTIFICATE OF SERVICE

 **I HEREBY CERTIFY** that on September 24, 2019, I served the foregoing by mail and

electronic mail on:

**Katerina Housos**
**Brittany Alexandra Stevens**
Phillips & Associates
45 Broadway
Suite 620
New York, NY 10006
212-248-7431
Fax: 212-901-2107
katerina.housos@gmail.com
khousos@law.fordham.edu
khousos@tpglaws.com
bstevens@tpglaws.com
chernandez@tpglaws.com

    /s/ David B. Weinstein
    Attorney