```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
SADANNIE GRIFFITH,

                Plaintiff,

      -against-

CONEY FOOD CORP. d/b/a CHECKERS,
CHECKERS DRIVE-IN RESTAURANTS, INC.,
and JAVAID ABID, Individually,

                Defendants.

**MEMORANDUM & ORDER**

**19-CV-1601 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Sadannie Griffith brings this employment discrimination action against Defendants Coney Food Corp., d/b/a Checkers ("Coney Food"), Checkers Drive-In Restaurants, Inc. ("Checkers"), and Javaid Abid pursuant to Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (*See* Am. Compl. (Dkt. 12).) Griffith claims that Defendants discriminated against her on the basis of gender and because of her pregnancy. (*Id.* ¶ 3.) She also brings claims under the New York Labor Law ("NYLL") for failure to pay earned wages and failure to provide pay rate notice and wage statements. (*Id.* ¶¶ 94-107.) Currently before the court is Checkers's motion to dismiss Griffith's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Mot. to Dismiss ("Mot.") (Dkt. 31).) For the following reasons, Checkers's motion is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

### A. Facts

Griffith alleges that she worked for Coney Food, a Checkers franchise, from June 29, 2018 until sometime in July 2018. (Am.

Compl. ¶¶ 39-53.) Griffith was hired for the position of "Crew Member," and her responsibilities in that role included working the cash register and making drinks for customers. (*Id.* ¶¶ 39, 45-48.) Griffith asserts that Coney Food and Checkers were her "joint employers" (*id.* ¶ 21), and alleges numerous examples of joint control to support that characterization:

- Checkers controls or approves the appointment of Coney Food's management-level employees (*id.* ¶ 23);

- Checkers maintains Coney Food's point of sale system (*id.* ¶ 24);

- Checkers supervises the opening of its franchises, including Coney Food's opening (*id.* ¶ 25);

- Checkers imposes restrictions on Coney Food's operations (*id.* ¶ 26);

- Checkers provides "a field-based franchise business team" to support Coney Food's operations (*id.* ¶ 27);

- Checkers imposes a five-week training program on every new franchise, including Coney Food (*id.* ¶ 28);

- Checkers's business model depends on its franchise-owned stores, and so depends on Griffith's work as an employee (*id.* ¶ 29);

- Checkers's website states that "it is extremely important to not only our franchisees, but also our executive team, to operate as one brand" (*id.* ¶ 30);

- Checkers "sets and enforces requirements" on Coney Food in areas such as monitoring employee performance and specifying procedures that employees must follow (and thus indirectly controls employees' work) (*id.* ¶ 31);

- Checkers requires Coney Food to employ specific systems for tracking wages and hours and retaining payroll records (*id.* ¶ 32);

- Checkers has the right to audit all of Coney Food's records and to inspect its facilities (*id.* ¶ 33); and

- Checkers can terminate its franchise agreement with Coney Food under certain circumstances, including if Coney Food violated the law (*id.* ¶ 34).

Defendant Abid was Coney Food's General Manager and Griffith's direct supervisor. (*Id.* ¶¶ 35-36.) Griffith, who was pregnant at the time, alleges that on July 2, 2018, a coworker told her that Abid had complained about Griffith being slow at her job and sitting down too often, and that Abid had asked the coworker if Griffith was pregnant. (*Id.* ¶ 49.) The coworker confirmed to Abid that Griffith was pregnant, and told Griffth that Abid stated in response that he would not have hired Griffith if he had known that she was pregnant. (*Id.* ¶ 50.) Shortly after Griffith spoke with her coworker, she got a call from Abid, who told her, "had I known you were pregnant, I wouldn't have hired you." (*Id.* ¶ 51.) Later that day, Abid confirmed via text message that he was terminating Griffith because she was pregnant. (*Id.* ¶ 52.) Griffith alleges, upon information and belief, that Checkers and/or Coney Food terminated Abid a few weeks later. (*Id.* ¶ 54.) Griffith further alleges that Defendants owe her $42.40 in unpaid wages

(*id*. ¶¶ 55-63), and that Defendants failed to provide her with written notice regarding her rate of pay and wage statements in violation of the Wage Theft Prevention Act, (*id*. ¶¶ 65, 67).

### B. Procedural History

On July 10, 2018, Griffith filed a gender and pregnancy-based discrimination complaint with the New York State Division of Human Rights ("NYSDHR") against Coney Food, Checkers, and Abid. (*See* Mem. in Opp. to Mot. to Dismiss ("Opp.") (Dkt. 32-1) at 2.) On December 12, 2018, Griffith requested that her NYSDHR complaint be dismissed for administrative convenience so she could file her complaint in federal court. (*Id*. at 2-3.) The NYSDHR sent Griffith's complaint to the Equal Employment Opportunities Commission ("EEOC"), and on March 8, 2019, Griffith received a Notice of Right to Sue from the EEOC. (*Id*. at 3.) On March 20, 2019, Griffith filed a complaint in this court against Coney Food[1] and Abid, but not against Checkers. (Compl. (Dkt. 1).) Griffith amended her complaint on July 16, 2019 and added Checkers as a Defendant. (Am. Compl.)

On October 30, 2019, Checkers filed a fully briefed motion to dismiss Griffith's complaint. (Mot.; Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 31); Opp.; Reply (Dkt. 33).) In her opposition to Checkers's motion, Griffith explicitly withdrew her Title VII claims against Checkers, leaving only her state and city claims. (*See* Opp. at 2 n.1.)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a district court should dismiss a case when it "lacks statutory or constitutional power to adjudicate it."

---

[1] On September 4, 2019, the Clerk of Court issued an Entry of Default as against Coney Food. (*See* Dkt. 25.)

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[2] In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept all material factual allegations in the complaint as true, but should not draw "argumentative inferences favorable to the party asserting jurisdiction." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)). The court may refer to evidence outside the pleadings. See *Makarova*, 201 F. 3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F. 2d 1006, 1011 (2d Cir. 1986) (stating that "evidentiary matter may be presented by affidavit or otherwise" under a Rule 12(b)(1) motion)). The plaintiff bears the burden of showing, by a preponderance of the evidence, that the court has subject matter jurisdiction over its claims. *See id.*

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To decide a defendant's motion to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). However, the court will "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court must then evaluate the "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This plausibility analysis "does not

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

impose a probability requirement at the pleading stage," but requires the complaint to provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

#### A. Griffith Has Alleged Sufficient Facts that Checkers is Griffith's Joint Employer under the NYSHRL and the NYCHRL

Checkers first argues that Griffith's NYSHRL and NYCHRL claims[3] must be dismissed because Checkers was not her "joint employer" for purposes of her state and city law discrimination claims. (Mem. at 8-9.)

The joint employer doctrine allows an employee who is "formally employed by one entity . . . to impose liability on another" based on "the relationship between two possible employers." *Knight v. State Univ. of New York at Stony Brook*, 880 F.3d 636, 642 (2d. Cir 2018). Two employers are "joint" when they are "separate legal entities, but . . . handle certain aspects of their employer-employee relationship jointly." *Arculeo v. On-Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir. 2005). In determining joint employer status, courts look to whether the defendant exercised "immediate control" over the other company's employees. *See, e.g.*, *Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) (applying "immediate control" test to Title VII claim); *Brankov v. Hazzard,* 142 A.D.3d 445, 445-46 (1st Dept. 2016) (applying "immediate control" test to NYCHRL claim); *see also Kology v. My Space NYC Corp.*, 177 F. Supp. 3d 778, 782

---

[3] Checkers makes the same argument as to Griffith's Title VII claims. However, as Griffith has abandoned those claims, Checkers's motion to dismiss is granted as to Griffith's Title VII claims, and the court need not analyze Griffith's employment status under Title VII.

6

(E.D.N.Y. 2016) ("The analysis used to determine whether an entity is an individual's employer pursuant to the NYSHRL and NYCHRL is substantially the same as that used under Title VII."). Similar factors are assessed to determine "immediate control" under both federal and state discrimination laws, including "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *See NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994); *Brakov*, 142 A.D.3d at 446 (enumerating the same relevant factors).[4] Finally, "[t]he existence of a joint employer relationship is essentially a factual issue that cannot be resolved based on the complaint alone." *Hassanein v. Gino's Italian Rest. on 5th*, No. 16-cv-3365 (AMD), 2017 WL 4350515, at *7 (E.D.N.Y. Mar. 27, 2017).

Checkers argues that Griffith has failed to allege that Checkers had control over hiring and firing at Coney Food or that Checkers had sufficient control over Coney Food's recordkeeping, payroll, and insurance.[5] (Mem. at 9.) The court disagrees; in fact, the amended complaint alleges numerous facts sufficient to support an inference of joint employer status. The amended complaint

---

[4] Though the factors outlined by courts to determine joint employer status overlap as to federal and state claims, the court is mindful of its independent duty to liberally interpret the NYSHRL and the NYCHRL. *See* N. Y. Exec. Law, § 300 (explaining that the NYSHRL's provisions must be construed "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws . . . have been so construed"); *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011) (holding that courts must construe provisions of the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible").

[5] Checkers stresses that it was Defendant Abid, and not Checkers, that ultimately terminated Griffith from her position. (Mem. at 9.) Yet, focusing solely on this fact takes too narrow a view of the factors courts must consider when determining if a joint employer relationship exists; indeed, that Abid was the individual who ultimately fired Griffith because she was pregnant tells us very little about the overall relationship between Checkers and Coney Food.

alleges, *inter alia*, that Checkers controls the appointment of Coney Food management (Am. Compl. ¶ 23); oversees Coney Food's point of sale system (*id.* ¶ 24); and imposes various operational restrictions on Coney Food, "including but not limited to, restaurant appearance and layout requirements, operations standards, management standards, use of suppliers, and advertising standards," (*id.* ¶ 26). It further alleges that Griffith's work is integral to Checkers's operations because Checkers "runs a fast-food business dependent on its franchise, and corporate-owned stores, selling and delivering food" (*id.* ¶ 29); indeed, Checkers considers it "extremely important" that its franchises and executives "operate as one brand" and directly supervises the opening of new Checkers franchises, including Coney Food. (*Id.* ¶¶ 25, 30.) The amended complaint also alleges that Checkers exercises control over Coney Food's recordkeeping. (*See Id.* ¶¶ 32-33.) These allegations are sufficient to defeat Checkers's motion at this stage of the litigation, especially in light of the fundamental factual nature of the joint employer inquiry and the liberal construction the court must afford Griffith's NYSHRL and NYCHRL claims. Therefore, while Checkers will be free to raise these arguments again on a complete record on summary judgment, the court cannot say that, as matter of law, Checkers was not Griffith's joint employer for the purposes of her NYSHRL and NYCHRL claims.[6] *See Dias v. Cmty Action Project, Inc.*, No. 07-cv-5163 (NGG), 2009 WL 595601, at *6 (E.D.N.Y. Mar. 6, 2009) (joint employment status involved "essentially factual questions that cannot be disposed of on a motion to dismiss").

---

[6] Checkers initially argued in its motion to dismiss that Griffith's NYSHRL and NYCHRL claims are barred under the "election of remedies doctrine." (Mem. at 19-20.) Checkers correctly abandoned this argument on Reply; because the NYSDHR dismissed Griffith's complaint for administrative convenience, Griffith retained "all rights to bring suit as if no [NYSDHR] complaint had been filed." N.Y. Exec. Law. § 297(9); *see also* NYC Admin. Code § 8-502(b).

### B. Griffith Has Alleged Sufficient Facts That Checkers is Griffith's Employer Under the NYLL

Checkers next argues that Griffith's NYLL claim must be dismissed because she has failed to allege an employment relationship. (Mem. at 10-14.)

The statutory standard for employer status under the NYLL is nearly identical to that of the Free Labor Standards Act ("FLSA"). *Compare* 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."), *with* NYLL § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). Courts in this Circuit have therefore regularly applied the same test, which looks to the "economic realities" of the relationship between the entities, to both FLSA and NYLL claims to determine whether an employment relationship exists. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) (applying the FLSA standard to a NYLL claim and noting that "the New York Court of Appeals has not yet resolved whether the NYLL's standard for employer status is coextensive with the FLSA's . . . but there is no case law to the contrary") (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013)).

Checkers first argues that, contrary to what the Second Circuit said in *Irizarry*, the New York Court of Appeals *has* held, in a 2012 case of which "it seems that not all federal courts are aware" (Mem. at 14), that the FLSA economic realities test does not apply under the NYLL. However, that case, *Matter of Ovadia v. Off. of Indus. Bd. of Appeals*, 19 N.Y.3d 138, 145 (N.Y. 2012), does not stand for the broad proposition Checkers suggests it

9

does.[7] Far from holding that the economic realities test is not co-extensive with the NYLL, *Ovadia* held that, as applied by the Industrial Appeals Board, the economic realities test was ill-suited to the specific context of a general/subcontractor relationship. *Ovadia*, 19 N.Y.3d at 144 (explaining that, in applying the economic realities test, the "Board relied on several characteristics that, if applied consistently in the construction realm, would likely render most general contractors the joint employers of their subcontractors' employees."). The court's holding was grounded in its policy concerns about "the actual relationships in the construction industry," *see id.*, and, at this juncture, is properly confined to that context. Contrary to Checkers's contention, it does not stand for the proposition that the line of cases in this Circuit applying the FLSA economic realities test to NYLL claims has been "definitively rejected." (Mem at. 13.) Because this case does not implicate *Ovadia's* policy concerns about the general/subcontractor relationship, "[t]he [c]ourt will follow the weight of authority among district courts in this Circuit and apply the economic reality analysis" to the NYLL. *Hart*, 967 F. Supp. 2d at 940.

Under the economic realities test, "whether an employer-employee relationship exists . . . should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). The test is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141-42. When evaluating employer status under the economic realities test, the amount of control exercised by the

---

[7] The New York Court of Appeals decided *Ovadia* on May 1, 2012, more than a year before the Second Circuit explained in *Irizarry* that the New York Court of Appeals "has not [] answered" whether the tests for employer status are the same under the FLSA and the NYLL. *See Irizarry*, 722 F.3d at 117.

10

defendant is the "key" inquiry. *Lopez v. Acme Am. Envtl. Co., Inc.*, No. 12-cv-511 (WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012).

The Second Circuit has outlined two tests for determining whether a defendant exercises the requisite control to qualify as an "employer"—one relating to formal control and the other relating to functional control. In *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984), the Second Circuit described four factors signifying formal control by an employer: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12. Even in the absence of formal control as described by the *Carter* factors, however, a defendant may be characterized as an "employer" under the economic realities test if he or she exercises functional control over the relevant workers. In *Zheng v. Liberty Apparel Co, Inc.*, 355 F.3d 61 (2d Cir. 2003), the Second Circuit recognized six additional factors indicative of functional control:

> (1) whether [the alleged employers'] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged employers'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employers].

*Id.* at 72.

11

Here, the amended complaint alleges sufficient facts to meet either test. The amended complaint asserts, *inter alia*, that Checkers: (1) controls or approves the appointment of Coney Food's management-level employees; (2) maintains Coney Food's point of sale system; (3) supervises the opening of, and imposes restrictions on, Coney Food; (4) provides a franchise business team to support Coney Food's operations; (5) sets and enforces various employee performance requirements; and (6) has the ability to audit and inspect Coney Food's records and facilities. Taking these facts as true, as the court must at this stage in the proceedings, they state a plausible claim that Checkers was Griffith's employer under the NYLL.

Checkers argues that "New York courts have held—nearly unanimously—that franchisors are not the employer of their franchisees' workers as a matter of law" (Mem. at 11), and that "even courts erroneously applying the economic realities test under the NYLL have found that franchisors do not employ the workers of franchisees." (Mem. at 11-14.) Yet, no such blanket rule exists, and courts analyzing the employment relationship on a case-by-case basis under the economic realities test have held that plaintiffs have adequately pled facts to support a finding that a franchisor could be held liable as their joint employer. *See, e.g.*, *De Jesus v. Subway IP Inc.*, No. 16-cv-6773 (VSB), 2018 WL 3442888, at *3 (S.D.N.Y. July 17, 2018) (finding allegations in complaint sufficient as basis to hold franchisor liable under FLSA and NYLL as plaintiff's employer); *Olvera v. Bareburger Grp. LLC*. 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014) (same). In fact, the allegations in *De Jesus* are strikingly similar to those alleged here. In *De Jesus*, plaintiff alleged, *inter alia*, that franchisor "[benefited] from [p]laintiff's work, maintained the authority to inspect the [] franchise where he worked, maintained the right to terminate the franchise for violation of the franchise agreement and/or violation of the law, guided franchisees in how to hire

and train employees, maintained requirements as to layout, provided materials for franchisees to give to employees directing them how to perform their jobs, and had the ability to review records as to the records of hours and wages worked by employees such as [p]laintiff." *De Jesus*, 2018 WL 3442888, at *3. Griffith alleges substantially similar facts here and, as in *De Jesus*, the court finds that "[t]hese allegations plausibly allege formal control over employment such that [Checkers] can be held liable" as Griffith's employer.[8] *Id.*

Finally, Checkers argues that Griffith's NYLL claims fail because she "does not allege that she and the [D]efendant were parties to a contract for the payment of wages." (Mem. at 21.) The court disagrees. As discussed above, Griffith has adequately alleged an employment relationship with Checkers, as well as the hours she worked, her hourly wage, and the amount of back wages she is owed. This is sufficient to state a claim under NYLL. Checkers's argument to the contrary relies on *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629 (1st Dep't 1993), which dismissed a breach of contract claim and held that "plaintiff cannot assert a statutory

---

[8] Checkers argues that, even if it were considered Griffith's joint employer, Griffith has nonetheless still failed to allege a basis for liability because the amended complaint fails to allege that Checkers (1) "even knew [Plaintiff] was pregnant, female, or was terminated" or (2) "withheld wages, knew that [Coney Food] had done so, or knew that [Coney Food] was not providing [Plaintiff]" the requisite wage and hour to which she was entitled." (Mem. at 16.) Here, however, the amended complaint alleges sufficient facts to infer that Defendant Abid, the General Manager of Coney Food, was also Checkers's employee for the purposes of Griffith's discrimination and NYLL claims. (*See, e.g.*, Am. Compl. ¶ 23 (alleging that Checkers controls or approves the appointment of Coney Food's management-level employees).) As such, the amended complaint adequately alleges that Checkers was "in a position to control the activities of" Abid and therefore is jointly and severally liable for his alleged misconduct. *Cf. Sosa v. Medstaff, Inc.*, No. 12-cv-8926 (NRB), 2013 WL 6569913, at *4 (S.D.N.Y. Dec. 13, 2013).

claim for wages under the Labor Law if he has no enforceable contractual right to those wages." *Id.* at 632. Yet, Checkers's reliance on *Tierney* and the subsequent cases following *Tierney* that dismissed NYLL claims for failure to allege an enforceable contractual right, is "misplaced, [as] [t]hey involve claims for compensation outside of the traditional meaning of 'wages', *i.e.*, for the payment of bonuses or other incentive compensation." *Kloppel v. HomeDeliveryLink, Inc.*, 17-cv-6296 (FPG), 2019 WL 6111523, at *5 (W.D.N.Y. Nov. 18, 2019) (collecting cases). By contrast, the "NYLL does not require an enforceable contractual right where . . . straight wages are at issue." *Id.; see id.* ("Requiring [p]laintiffs to prove a contract that entitles them to wages for time they worked is belied by a century of statutory protection for workers' wages."). That is the case here, and Griffith has stated a claim for relief under NYLL.

## IV. CONCLUSION

For the reasons stated above, Checkers's (Dkt. 31) motion to dismiss is GRANTED as to Plaintiff's Title VII claim but DENIED as to Plaintiff's remaining claims. The parties are DIRECTED to contact the chambers of Magistrate Judge James Orenstein to discuss next steps in this case.

SO ORDERED.

Dated:  Brooklyn, New York
        August 17, 2020

                                                  /s/ Nicholas G. Garaufis
                                                  NICHOLAS G. GARAUFIS
                                                  United States District Judge